RAFAEL MIRANDA, Plaintiff and Appellee, *v.* JOSÉ LÓPEZ, Substituted by his heirs, Defendant and Appellant.

No. 8169. Argued March 11, 1941.—Decided March 14, 1941.

S. *O'Neill Torres* for appellant. *L. Rojas Flores* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

This is a case for the collection of money. In the original complaint filed in the month of June, 1937, by the plaintiff-appellee, Rafael Miranda, in the District Court of Arecibo, he alleged that the defendant, José López, owed him $1,553.36 as the balance of an account for agricultural advances on tobacco corresponding to the crop of 1935–36. In October, 1937, the defendant, José López, died and on December 14 of the same year, the plaintiff filed an amended complaint changing the concept of his claim since he then alleged that the $1,553.36 claimed corresponded to the amount of a sale of tobacco made on July 9, 1936, by the plaintiff to the defendant, instead of a balance of the account for agricultural advances corresponding to the crop of 1935–36, as he had alleged in his original complaint. The amended complaint was demurred to by the heirs of José López, who had been substituted as party defendant, for not alleging sufficient facts to constitute a cause of action. The demurrer was overruled and they then answered denying that the plaintiff delivered and sold to the defendant any amount of tobacco on July 9, 1936, nor on any other date, although they accepted that José López contracted for a crop loan with the plaintiff in regard to the above mentioned crop.

The trial was held and the lower court gave judgment on the complaint, not for the $1,553.36 claimed as the object of this specific sale of tobacco made on July 9, 1936, as alleged, but for $857.74 as the balance of the crop loan contracted account, plus interest, and deducting from said amount, as compensation, the amount of $434.46, plus interest, which according to a promissory note was owed by the plaintiff to José López.

The defendant heirs have filed this appeal alleging that the lower court committed error, first, in overruling the demurrer and, second, in weighing the evidence, the judgment rendered being contrary to the same.

The first error is based by the appellant on the fact that the plaintiff changed the cause of action in the amended complaint. This amended complaint was filed without permission of the court which the plaintiff had a right to do, according to Section 139 of the Code of Civil Procedure, since the original complaint had not been demurred to, nor answered by the defendant. Any pleading may be amended once without requesting or obtaining permission from the court, this being a right that the parties cannot be deprived of, and it is similar to that in regard to the filing of the original pleadings, as was decided by this Court in the case of *González* v. *González*, 43 P.R.R. 792, it also being decided that "amendments to the complaint which may materially change the cause of action, or set up one essentially distinct, or comprise a matter wholly foreign to the original complaint, are not allowable."

The original complaint as well as the amended complaint in this case alleged sufficient facts constituting a cause of action against the defendant José López, first, and later his heirs, because in both the plaintiff attempted to collect the same amount of money which according to him was due.

Now then, the question was not duly presented by the appellant to the lower court. It is not by a demurrer of

lack of facts constituting a cause of action that this question may be raised but by a motion to strike the amended pleadings. In 49 C.J. 556, it is said:

"Although there is authority to the contrary, it is ordinarily held that the fact that an amendment to a complaint changes the cause of action or introduces a new cause of action cannot be urged by demurrer, but must be presented by a motion to strike."

In the case of *Williams* v. *Williams*, 88 N.W. 1057, 1058, the reasons for upholding this doctrine are clearly expressed as follows:

"Whether, under leave to amend, plaintiff had the absolute right to file a substituted pleading setting up a different cause of action, we need not determine. That question could have been raised by motion to strike the substituted petition, and could only be raised in that way. The objection could not be considered in ruling on a demurrer, which must necessarily go to the sufficiency of the pleading itself, and not to the right of a party to file it. The demurrer should have been overruled because the defendant attempted thereby to have the court consider not only the averments of the substituted petition, but also those of the original petition . . . A substituted pleading supersedes previous pleadings by the same party, and a demurrer to such pleading must be determined on the sufficiency of its averments alone. The fact that these averments are inconsistent with the averments of the previous pleadings is not a ground of demurrer, and should not be made the basis of attack on the new pleading."

The lower court, therefore, acted correctly in overruling the demurrer in this case and did not commit the first alleged error.

 Under the second error the appellant maintains that the judgment is contrary to the evidence and that the lower court committed error in weighing the same.

In order to better understand the error charged it is necessary to copy at some length from the opinion delivered by the judge on which the judgment was based. After referring to the allegations of the original and of the amended

240

complaints and to the variation of the concept of the claim made by the plaintiff, he stated as follows:

"This disparity in the claim taken together with the manner in which the witnesses of both parties explained the documents presented *makes it difficult to decide the controversy without incurring in error in weighing the evidence.*

"The defendant denies in its answer that it owes anything to the plaintiff and alleges that José López liquidated his accounts for crop loans every year and that the plaintiff, in July, 1936, owed José López the amount of $436.46 which was so stated in a promissory note which he signed in favor of José López and which was the object of a complaint filed in the Municipal Court of Ciales and on which judgment was obtained.

"Among the documents presented as liquidations made by López to the plaintiff, there is one dated July 8, 1936, which is the only one that states—crop loan contract—and which shows a balance in favor of Miranda of $857.74. There is another liquidation of the same date which although it has a nine on top of the eight and is made *on blue paper* shows a balance in favor of the plaintiff of $1553.36 *on which the complaint is based and which is apparently contradictory to the previous liquidation.*

"The bookkeeper of José López testified that the liquidation on blue paper *was merely an information for the A.A.A., implying that the amounts on the same were inflated.* The plaintiff stated that said liquidation *on blue paper refers to a sale of tobacco that he made to López and that it is distinct from his crop loan account.*

"The liquidation on blue paper has on the top after the name of Miranda, the word—*sale*—written in the same manner as the rest. This means that when José López signed said document he wished to distinguish that liquidation from the other which reads—crop loan account—.

"From the evidence as a whole, including the testimony of the plaintiff, or that part which we have believed, *and considering the change he made in his complaint and the promissory note that he signed,* we reach the following conclusion:

"José López did not definitely liquidate in cash the crop loan account of the plaintiff corresponding to the crop of 1935–36 which was pending liquidation of the account with other persons who had been given crop loans under orders of and to the account of the plaintiff. That is why suit was filed against López in May, 1937,.

*when he was not dead as yet, claiming the payment of the crop loan account. It was then that Miranda was truthfully stating the concept on which he based his complaint.*

"When he was asked for a bill of particulars in regard to the balance of $1553.36 which he claimed, *he realized that he could not use the certificate in blue paper which states that balance in his favor because on the same appears the word—sale—; and then he changed his complaint saying that he claimed the amount of a sale and not of a crop loan account in order to claim the same amount which is more than the liquidation of $857.74 of the crop loan account . . .*"

"It appears from the documents presented and the testimony of Miranda that López received several amounts of tobacco for said crop of tobacco planted by other persons in regard to the delivery of which the plaintiff intervened.

"Miranda had to present to the A.A.A. a certificate of his crop and for this reason López gave him the statement on the blue paper and put the word—sale—to distinguish it from the crop loan account of the plaintiff which was signed on white paper. *It appears that the amounts on the blue paper are inflated since the price given to the three classes of tobacco is high and distinct from that of the other liquidations but this does not affect the decision of this case.*

"The promissory note signed by Miranda was to answer for the accounts of the other farmers who obtained loans under his guarantee. *In regard to this the plaintiff told the truth* and testified that he agreed that the amount of $434.46 which is the amount of the promissory note should be deducted.

"For the foregoing reasons we render judgment holding that the plaintiff and the defendant should pay and liquidate their respectives pending accounts, to wit: the defendant should pay to the plaintiff the amount of $857.74 with interest at 6% per annum from the date of this judgment, deducting from said sum as a set off, the amount of $434.46, with interest at 9% per annum since July 11, 1936, until paid in full as was agreed in the promissory note which the plaintiff owes and which was the object of the judgment rendered by the municipal court . . . " (Italics supplied.)

As may be seen, the lower court weighed the evidence and rendered its judgment disregarding the concept of the claim made by the plaintiff in accord with the allegations of his amended complaint, that is, the sale of a specific amount of tobacco made on July 9, 1936, and it decided the case based

on the allegations made by the plaintiff in his original complaint or, that is, the liquidation of his crop loan account on the tobacco delivered during the crop of 1935–36 and ordering furthermore that the amount of the promissory note signed by the plaintiff José López be deducted.

We have carefully read the transcript of the evidence which contains all the proof presented in this case and it appears from it that the $1,953.36 claimed by the plaintiff in his amended complaint as payment for a sale of tobacco made on July 9, 1936, and which amount appears in detail in Exhibit "A" of the plaintiff (which is the blue certificate to which the opinion of the lower court refers), was a document expressly prepared to be delivered to the A.A.A. in order to collect 30 per cent of the compensation which the Federal Government paid to tobacco farmers and which document does not represent a sale. This appears from the testimony of the witness of the defendant Pedro Vanga, who was an employee of José López for ten years. Explaining this transaction, he stated as follows:

"Q.—Examine this document that I show you. What document is this? (Showing him the bill presented by the plaintiff in regard to the sale of 91 hundred-weights of tobacco).

"A.—It was a liquidation which he asked to have made for him.

"Q.—Who?

"A.—Don Rafael Miranda.

"Q.—For what did he want that liquidation?

"A.—*For matters of the A.A.A.* in regard to tobacco and it was made not only for him but for several persons but later it had no effect whatsoever and it was made in the form of a sale because when we liquidated we demanded receipts from the crop owners.

"Q.—This document, was it an authentic document of the sale or for what purposes was it made?

"A.—*José López was asked to make this, he was asked to make a liquidation for purposes of collecting 30% or something from the A.A.A.*

"Q.—In the years 1934, 1935 and 1936, did you not have to give all the farmers who delivered tobacco a participation in the amount of tobacco for the compensation of the Federal Government?

"A.—Yes, sir, and that was for the payment of the A.A.A.

"Q.—That tobacco that is referred to in this document, to what tobacco does it refer?

"A.—For the A.A.A., *and this tobacco was never received in the warehouse."*

. . . . . . . .

"Q.—And for what is this liquidation of $857 and that one (of five hundred) of fifteen hundred dollars?

"A.—Because that is a true liquidation of the tobacco which was delivered or sold to the house and *this is a false liquidation. . . .*

"Q.—What you mean to say is that on this blue paper an inflated amount is put so that the A.A.A. would pay more?

"A.—*Something like that.*

"Q.—But it refers to the same thing?

"A.—He went to the house and told José López to put some hundred-weights of tobacco there and it is a liquidation which is not in the record because the true liquidation was this one and there is another one of tobacco on his crop.

"Q.—When these notes were given for the A.A.A. was more tobacco listed than that which had been delivered?

"A.—Yes, sir, there were 90 odd hundred-weights and he wanted to make a contract because he had none and it was given to him and some other persons because the tobacco people usually did that." (Italics supplied.)

And in answer to questions of the attorney for the plaintiff, he testified:

"Q.—Do you mean to say that this document shown to you by the judge which states that it is a sale, was simulated to defraud the A.A.A.?

"A.—I do not know for what purpose Miranda did it.

"Q.—But you signed it?

"A.—Yes, sir, I was an employee, but it was not the tobacco that I received, because I was the person who received the tobacco.

"Q.—José López and Rafael Miranda, two old men, got together to steal from the A.A.A.?

Judge: Do not continue along that line." (Italics supplied.)

The plaintiff himself, on further testifying, admitted that said document on blue paper was presented by him to the A.A.A. but he insisted that it referred to a real sale of tobacco.

The evidence of the defendant shows also, not that "it appears that the amounts on the blue paper are inflated" as the lower court says, but that in fact higher prices were given to the different classes of tobacco, comparing them to the prices which appear in all the other liquidations presented in evidence.

In the case of *Romero et al.* v. *Romero et al.*, 33 P.R.R. 105, 106, this Court decided the following:

" . . . When an amended pleading is filed as a substitute for the original pleading the latter ceases to be part .of the record, except to decide for the purposes of prescription when the action was in fact commenced and whether a new cause of action has been introduced, or something of this sort. *Barber* v. *Reynolds*, 33 Cal. 497; *Kelly* v. *McKibben*, 54 Cal. 192; *Redington* v. *Cornwell*, 90 Cal. 50; *Collins* v. *Scott*, 100 Cal. 446; *Tehama* v. *Sisson*, 152 Cal. 179; *Collins* v. *Gray*, 3 Cal. App. 726; *Ross* v. *Flynn*, 189 Pac. 293; *Hansen* v. *Goodrich* (Mont.) 181 Pac. 739."

See also the cases of *Vahamonde* v. *Miró et al.*, 36 P.R.R. 554; *Martínez* v. *Jiménez et al.*, 20 P.R.R. 481 and *Taboada* v. *Dragoni*, 50 P.R.R. 865.

For the purposes of this suit the lower court should not have taken into consideration the evidence presented to apply it to decide the allegations of the original complaint in regard to the liquidation of the crop loan account for tobacco for the year 1935–36, since said complaint was no longer a part of the record except for the purposes set forth in the decisions cited above.

The case should have been decided under the theory set forth by the plaintiff in his amended complaint, that is to say, whether or not it was proven that a sale of tobacco was made on July 8, 1936. The principal evidence presented to uphold this allegation, to wit, Exhibit "A" of the plaintiff, written on blue paper, was so discredited that the lower court itself discarded it as apparently false. The preponderance of the evidence shows, as we have seen before, that said document was expressly prepared in order to be presented

to the federal agency of the A.A.A. with inflated prices which do not represent a real sale of tobacco made by the plaintiff to José López.

As the plaintiff changed the concept of his claim in filing the amended complaint, we are of the opinion that the judgment rendered is erroneous because it is not congruent with the allegations of said amended complaint. *De la Plaza* v. *Central Boca Chica,* 34 P.R.R. 560; *People* v. *Porto Rico R. L. & P. Co.,* 25 P.R.R. 377.

 The lower court committed a manifest error in weighing the evidence and applying it to award the plaintiff the amount of the liquidation of his crop of tobacco for the year 1935–36, a matter not included in the object of the suit—and to which therefore Section 191 of the Code of Civil Procedure, which provides that the courts may award the plaintiff that which is compatible with the allegations of the complaint and which may be included in the object of the suit—is not applicable. A sale of tobacco, made on a certain date, may be included in the liquidation of the crops of one year, but the latter cannot be included in the former.

For the foregoing reasons, the judgment appealed from must be reversed and the amended complaint dismissed, and the plaintiff ordered to pay the costs.